UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ILONA CLAUSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-2321 |
| | § | |
| MICHAEL J ASTRUE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ilona Janine Clauson ("Clauson") seeks review of a final determination by Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), that she is not entitled to receive Social Security disability benefits. The parties have consented to have this Court conduct all proceedings, pursuant to 28 U.S.C. § 636(c). Dkt. 10. Before the Court is Clauson's Motion for Summary Judgment and Supporting Brief and the Commissioner's Motion for Summary Judgment and Supporting Brief. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court orders that Clauson's motion be **DENIED** and that summary judgment be **GRANTED** for the Commissioner.

### I.     Background

Clauson is a 44-year-old woman with a seventh grade education. Tr. 35–38, 195. Prior to and after her alleged disability onset date of January 31, 2009, Clauson worked as a home health care aide. Tr. 154–157. On November 3, 2009, Clauson filed for Social

1

Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits ("SSI"), stating several conditions limited her ability to work: manic-depressive disorder, scoliosis, emphysema, and a learning disability. Tr. 149–158, 190. Upon the advice of counsel, she later amended her onset date to January 1, 2010. Tr. 15. After filing her application, Clauson continued to work as a home health care aide, employed by her mother, but worked only 20 hours a week—less than the threshold for "substantial gainful activity." Tr. 17.

The Commissioner denied both applications, initially on March 12, 2010 and again upon reconsideration on June 16, 2010. Tr. 77–90, 98–107. Clauson then requested a hearing in front of an Administrative Law Judge ("ALJ"), which was held on April 4, 2011. Tr. 31–72. After conducting the five-step sequential evaluation process under 20 C.F.R. § 404.1520(a) and 20 C.F.R. § 416.920(a), ALJ Clifford Leinberger ruled that Clauson was not disabled and therefore not entitled to benefits.[1] Tr. 15–26. Clauson sought review of the ALJ's decision, which was denied by the Appeals Council on June 1, 2012. Tr. 1–3.

## Medical Records

Clauson's main health care provider has been the Harris County Martin Luther King and Mease Clinics ("MLK"), where she became a patient in 2005. There, the clinic physicians have treated her for a variety of health concerns, including asthma, depression,

---

[1] Although Clauson remained employed as a home health care aide after her alleged disability onset date, her earnings—at 20 hours per week and $7.25 per hour—were below the statutory requisite for "substantial gainful activity." Thus, the ALJ found that she has not engaged in substantial gainful activity since the amended alleged disability onset date. *See* 20 C.F.R. 404.1571 *et seq*. and 20 C.F.R. 416.971 *et seq*. Tr. 17.

and back and neck pain. Clauson's relevant medical history dates back to November 8, 2005, when she reported neck pain lasting the previous 2.5 months before the appointment.[2] Tr. 441.

During the next year, Clauson returned to MLK. Clauson received asthma treatment in April 2006. One month later, in May 2006, Clauson returned, complaining that her neck pain persisted, and that her left side was weak and caused her pain "three times a day, sharp, [and] worse in the leg than arm." Tr. 438–39. Clauson reported that she had been attempting to treat the pain with Tylenol, but told Dr. Shah that it only relieved her pain for 45 minutes. Dr. Shah nonetheless recommended she continue with Tylenol. Tr. 438. Clauson also reported being depressed, but Dr. Shah noted that she was "stable [and had] no suicidal ideation or thoughts of harming others." Tr. 438.

In July 2006, Clauson returned to see Dr. Shah, reporting she still suffered from left side pain and alleging the pain had persisted for 1.5 years. Additionally, she also reported "tingling and numbness." Dr. Shah ordered an MRI and electromyography (EMG) and recommended Clauson consult neuropathy and psychology specialists. Tr. 437. The EMG showed "no evidence of radiculopathy" that would cause the pain, weakness, and numbness in her left side. Tr. 431–36. Dr. Shah saw Clauson a final time that year in December 2006, where no improvements in her conditions were noted. Tr. 430.

---

[2] The medical record consists of hand-written, often illegible notes from various doctors at different institutions.

In March 2007, in addition to her persisting neck and cervical back pain, Clauson began to complain of lower back pain. Dr. Gentry ordered an x-ray and MRI of Clauson's back. The x-ray report read, "Normal lumbar spine except for minor hypertrophy . . . compatible with degenerative joint disease." Tr. 364. Similarly, the MRI "again shows these normal findings." Tr. 375. Despite these "normal" results, in July 2007, Clauson continued to report lower back pain. Tr. 427.

On April 7, 2007, Clauson returned to MLK, reporting that she tripped on a tool box and injured her right knee. Clauson began to use a cane, insisting that it was necessary to alleviate the pain when walking. Tr. 429. X-rays of her knee and spine were ordered and revealed no fractures in her knee and a "normal lumbar spine except for minor hypotrophy compatible with degenerative joint disease." Tr. 362–64.

In December 2007, two more MRIs were performed on Clauson's neck and spine. Results remained "unremarkable" and "normal" with regard to her neck, but this time reported that she had a chronic disc irregularity of C4/C5 and C5/C6, spinal stenosis, and spinal cord impingement in her back. Tr. 383–85. The report noted that the disc irregularity was "suggestive of old trauma," and "the remainder of the cervical spine is unremarkable." Tr. 385.

In April 2008, Dr. Manning began treating Clauson at MLK. Tr. 356. After initially denying any prior injuries, Clauson admitted to Dr. Manning that she had suffered a head injury in 1985 but had never received medical treatment because she did not have any pain in the immediate aftermath. Dr. Manning discussed Clauson's history of chronic pain with her, then reviewed the results of her latest tests and MRIs, which

4

indicated a "normal MRI brain and lumbar spine." Tr. 382, 423. Dr. Manning noted there was, however, evidence of "spinal stenosis in the cervical region" and recorded related symptoms of neck tenderness over the mid cervical spine and a slightly decreased range of motion. Tr. 356–57. Dr. Manning advised Clauson to stop smoking and to attend a cessation program, because smoking exacerbated her asthmatic symptoms. Tr. 356. Lastly, Dr. Manning reiterated Dr. Shah's July 2006 recommendation that Clauson consult a neurosurgeon. Although Clauson had previously agreed to seek a specialist's opinion on her chronic pain, she never complied with those orders. Tr. 424. Three months later, when Clauson again complained of the same symptoms at her July 2008 check-up, Dr. Manning observed that the tenderness and decreased range of motion in Clauson's cervical spine persisted. Dr. Manning then referred Clauson to physical therapy. Tr. 356, 420.

In September 2008, Clauson's latest MRI and tests result indicated "chronic disc irregularity . . . suggestive of old [neck] trauma." Her lumbar spine, however, was normal. Dr. Bloodworth analyzed the test results and confirmed Dr. Manning's diagnosis of asthma, esophageal reflux, and lumbago. Dr. Bloodworth further commented that "the patient's [principal care provider] is addressing the patient's complaints." Tr. 354, 417. These results were consistent with the MRIs taken in December 2007.

On November 26, 2008, Clauson returned to MLK for an urgent visit, claiming that her "non-radiating lower back pain" had worsened in the past three days. Dr. Okpara diagnosed a paraspinal muscle spasm and prescribed 10 mg tablets of Cyclobenzaprine to

5

treat the pain and stiffness. Dr. Okpara also noted that Clauson's lungs were, clear with no wheezing. Tr. 352–53, 412.

In June 2009, Clauson complained of ongoing depression and requested a referral to a therapist. Tr. 351, 405. The next month, Clauson had an appointment with MLK's Behavioral Health and Counseling Department for individual therapy with Ms. Paula Harris. Clauson reported that "financial troubles and being undereducated are the major sources of stress." Tr. 402. Ms. Harris discussed the importance of managing stress levels as a way to manage pain and depression. No diagnoses or prescriptions were given, but Ms. Harris ordered Clauson to return to therapy. Tr. 401–03. The medical records do not reflect Clauson returning for any subsequent appointments.

On October 12, 2009, Clauson complained of another muscle spasm in her neck. Dr. Manning ordered an x-ray of the cervical spine, which resulted in "no acute cervical spine abnormalities," as well as "minimal degenerative change at C4/C5 and C5/C6." Tr. 350, 359. The staff physicians found "no soft tissue abnormalities." Tr. 359. At this final appointment prior to Clauson's filing for Social Security benefits, Dr. Manning entered diagnoses for neck pain, esophageal reflux, unspecified asthma, and lumbago. Tr. 350. Dr. Manning further recommended Clauson see a behavioral therapist and psychologist. Tr. 351.

### ALJ Hearing and Decision

On April 4, 2011, ALJ Leinberger held a hearing where Clauson appeared, represented by counsel. Tr. 33. Two impartial medical experts, Dr. Robert Borda, a

licensed psychologist, and Dr. Frank Barnes, an orthopedic surgeon, testified at the hearing, along with vocational expert Herman Litt. Tr. 15.

Clauson testified on her own behalf. At the hearing, she stated that she worked as a home health care aide prior to her disability onset date and that she continued to work in that capacity. Tr. 37–39. Furthermore, she stated she could perform daily activities such as cooking, laundry, and vacuuming. Tr. 43–44. Next, Mr. Litt testified that Clauson had past relevant experience only as a semi-skilled home health aide. Although the DOT described the job as medium exertional level, Mr. Litt testified that Clauson had actually performed it at only a light exertional level. Tr. 65. Finally, Mr. Litt answered affirmatively to the ALJ's hypothetical about whether someone with Clauson's age, experience, education, and limitations could perform the job of home health aide. Tr. 65–67.

In his decision, the ALJ determined that Clauson's purported limitations "are not credible to the extent they are inconsistent with the residual functional capacity assessment." Tr. 22–23. The ALJ went on to state that Clauson "described daily activities which are so limited that they appear implausible," particularly in the face of objective medical evidence. Tr. 23. Finally, the ALJ highlighted Clauson's questionable credibility by contrasting the activities she stated she could perform in her testimony with the activities she stated she could perform on her initial filing for Social Security benefits. The inconsistencies were apparent. Tr. 23–24.

On April 26, 2011, the ALJ concluded that Clauson was not disabled within the meaning of the Social Security Act. Tr. 26. In reaching his conclusion, the ALJ

conducted the required five-step analysis of a claimant's disability. At step one, the ALJ found that the claimant met the insured status requirements of the Social Security Act through December 31, 2013 and that she had not engaged in substantial gainful activity since January 1, 2010, her alleged onset date. Tr. 17. At step two, the ALJ concluded that Clauson had five severe impairments: asthma, lumbago, degenerative disc disease of the cervical spine, depression, and a learning disorder. Tr. 17.

At step three, the ALJ afforded substantial and great weight to opinions of the testifying experts, Dr. Barnes and Dr. Borda, respectively. Both experts opined that Clauson's severe impairments did not meet or medically equal listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24–25. The ALJ also afforded great weight to the opinions of State agency medical consultants Dr. Tina Ward and Dr. Roberta Herman, who opined that Clauson could perform less than the full range of light work. Tr. 24. Finally, the ALJ afforded great weight to Dr. Sarah Jackson and Dr. Susan Posey, State agency psychological consultants, who found that Clauson could perform unskilled work. Tr. 25. The ALJ reviewed a medical source statement and opinion offered by Dr. Manning, but afforded the opinions no weight. Tr. 24–25.

At step four, the ALJ found that Clauson was capable of performing her past relevant work as a home health aide. Vocational expert Herman Litt classified this position as semi-skilled work that Clauson would be able to perform based on her residual functional capacity assessment ("RFC"). Tr. 25–26. Thus, the ALJ found that Clauson was not disabled during the time period at issue.

Clauson raises two major issues to contend the ALJ's decision is erroneous: (1) the ALJ erred by not giving proper weight to the opinion of her treating physician, and (2) the ALJ's RFC omitted three limitations suggested by expert opinions. Dkt. 17.

## II.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to an material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III.    Standard of Review

Judicial review of the ALJ's final decision under 42 U.S.C. § 405(g) is limited to whether the decision is supported by substantial evidence in the record and whether the proper legal standard was used in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d

232, 236 (5th Cir. 1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court must affirm the ALJ's final decision where substantial evidence supports the ALJ's decision and the Commissioner followed the relevant legal standards. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). Reversal is appropriate only where no credible evidentiary choices support the Commissioner's decision. *See Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). Indeed, "[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Carey*, 230 F.3d at 135, citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The claimant bears the burden of proving his disability by establishing a physical or mental impairment lasting at least 12 months and preventing him from engaging in any substantial gainful activity. 42 U.S.C. § 1382c. In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commissioner applies a five-step sequential evaluation process. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 416.920(a)(4). A finding that a claimant is disabled at any point in the five-step process is conclusive and terminates the Commissioner's analysis. *Bowling*, 36 F.3d at 435. Although the burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### IV. Statutory Basis for Benefits

Clauson applied for both Social Security Disability Insurance (SSDI) and Supplementary Security Income benefits (SSI). SSDI benefits are authorized by Title II of the Social Security Act. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(c) (definition of insured status); 42 U.S. C. § 423(d) (definition of disability). In contrast, SSI benefits are authorized by Title XVI of the Social Security Act and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line. 20 C.F.R. §416.110. Eligibility for SSI is based on proof of disability and indigence. *See* 42 U.S.C. § 1382c(a)(3) (definition of disability); 42 U.S.C. § 1382(a) (financial requirements). Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382(c)(3)(A)(SSI). The law and regulations governing the determination of disability are the same for both programs. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

### V. Analysis

**1. Whether the Treating Physician's Opinion was Afforded Proper Weight**

Clauson claims the ALJ erred by failing to give "controlling weight" to the opinion of Dr. Manning, her treating physician. Under the Social Security regulations, a treating physician's opinion on the nature and severity of a claimant's impairment should receive controlling weight when it is "well-supported by medically acceptable clinical

11

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Perez v. Barnhart*, 415 F.3d 457, 465–66 (5th Cir. 2005); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). On the other hand, "good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

To support her assertion that the ALJ failed to accord controlling weight to Dr. Manning, Clauson directs the Court to only one document in the record—a statement from Dr. Manning entitled "Physical Residual Functional Capacity Questionnaire." Dkt. 17 at 6–7. She contends that this Questionnare evinces her ability to perform only a reduced range of sedentary work. Dkt. 17 at 6–7. Indeed, Dr. Manning's responses to the Questionnaire claim that Clauson can rarely lift ten or less pounds but never anything heavier; that she can never look up or down, left or right, or hold her head still; and that she can never twist, stoop, crouch, or climb. Tr. 496–97. However, Dr. Manning does not address or dispute the number of "normal" and "unremarkable" MRI and x-ray results of Clauson's neck and back. In fact, Dr. Manning does not refer to any test results or objective indicators at all—even any that might support his opinion.

In short, the entire document is nothing more than Dr. Manning's unsupported opinion confirming Clauson's self-reported limitations—a type of statement said to "typify 'brief or conclusory' testimony." *Foster v. Astrue*, 410 Fed. App'x 831, 833 (5th

Cir. Feb 10, 2011). For example, when Dr. Manning was asked to "characterize the nature, location, frequency, precipitating factors, and severity of [Clauson's] pain," Dr. Manning wrote only, "has had back and neck chronic pain." Tr. 494. Similarly, when asked to identify the clinical findings and objective signs of Clauson's symptoms, Dr. Manning responded, "In past tenderness of affected areas and decreased motion." Tr. 494. This is not a "well-supported" opinion, and thus the ALJ had good cause to reject it as conclusory and give it no weight. *See, e.g., Newton*, 209 F.3d 448.

Finally, Clauson argues that the ALJ, at minimum, was required to conduct a *Newton* analysis prior to rejecting Dr. Manning's opinion. The Court disagrees. The six-factor *Newton* analysis must be conducted "only with respect to *medical opinions* of treating physicians." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (emphasis in original). In contrast, many of Dr. Manning's opinions were "legal conclusions that [20 C.F.R. § 404.1527] describes as 'reserved to the Commissioner.'" *Id. See also* 20 C.F.R. § 404.1527(d) (Opinions that the claimant is disabled is not a "medical opinion," but is instead an opinion on an issue reserved to the commissioner.). Additionally, the medical source statement given by Dr. Manning did not refer to objective medical evidence supporting his conclusions and did not address the great amount of medical evidence that contradicted the conclusions.

2. **Whether the ALJ Properly Considered the Opinions of Other Experts**

Clauson next argues that Dr. Manning's findings were corroborated by the opinions of Dr. Barnes, Dr. Herman, and Dr. Jackson, and the ALJ stated that he afforded "substantial" or "great" weight to these opinions. Therefore, Clauson maintains the ALJ

erred by failing to afford more weight to Dr. Manning's opinion. Dkt. 17 at 10. Additionally, Clauson complains that the opinions of Dr. Barnes, Dr. Herman, and Dr. Jackson included limitations that were not completely incorporated in the ALJ's RFC assessment. Clauson therefore concludes that the ALJ's RFC is in error.

### A. Corroboration of the Treating Physician's Opinion

As the Court elaborated above, Dr. Manning's opinion was a conclusory opinion that did not refer to Clauson's treatment history, lab results, or "normal" MRI and x-ray reports. The opinion gave no reason for its alleged limitations. Thus, the ALJ made no error in dismissing that opinion. Accordingly, Dr. Manning's opinion cannot be rehabilitated by the argument that certain findings in Dr. Barnes, Dr. Herman, or Dr. Jackson's opinions could be consistent with Dr. Manning's.

### B. The ALJ's RFC Assessment Failed to Include Limitations

Next, the Court turns to Clauson's allegation that the RFC did not incorporate all the limitations proposed by Dr. Barnes, Dr. Herman, and Dr. Jackson's opinions. Specifically, Clauson alleges the RFC lacks three limitations. These limitations were (1) Dr. Barnes' opinion that Clauson could only lift upwards or work overhead occasionally; (2) Dr. Herman's opinion that Clauson could stand and/or walk for two hours in an eight hour work day; (3) and finally, Dr. Jackson's opinion that Clauson could only perform unskilled work. Dkt. 17 at 7–10. Each of these consultants expressed their conclusions through check-marked box responses.

As an initial matter, the Court notes that the ALJ is vested with the discretion to include or omit limitations in RFC findings, depending on whether those limitations are

14

supported by the medical evidence in the record. *See, e.g., Lafleur v. Colvin*, 13-30212, 2013 WL 4505445 (5th Cir. Aug. 26, 2013); *Gilmore v. Michael J. Astrue*, 2011 WL 335347 (S.D. Tex. January 31, 2011). Here, the ALJ's decision not to include these three limitations is supported by substantial evidence.

### i. Overhead Work or Upward Lifting Limitation

Clauson argues the ALJ erred by failing to include Dr. Barnes' suggested overhead or upward lifting limitation. However, during the hearing, Clauson herself testified she could reach overhead. Tr. 43. Further, although Clauson asserts a history of neck and cervical spine pain, she has no treatment plan in place or objective medical evidence substantiating an overhead or upward mobility limitation. The ALJ noted, "[T]he course of treatment pursued by [Dr. Manning] has not been consistent with what one would expect if [Clauson] were truly disabled." Tr. 25. The ALJ's reasoning demonstrated that he considered Clauson's medical history, weighed the reliability of the evidence, and assessed Clauson's RFC accordingly.

### ii. Standing and/or Walking Limitation

Next, Clauson claims that the ALJ erred by not including Dr. Herman's limitation that she could stand and/or walk for only "at least 2 hours in an 8-hour workday" in the RFC assessment. Dkt. 17 at 9, Tr. 506. First, this is an opinion as to the least, not the most, Clauson can do. Further, at the hearing, Clauson testified that she could ambulate without use of her cane and that she could walk "about a mile." Tr. 41–42. Even after Clauson began using the cane, a staff physician reported her gait being "normal" with "no gait spasticity." Tr. 354, 429. Therefore, the ALJ did not err in omitting a limitation on

15

Clauson's ability to stand and/or walk. There was substantial evidence to support the contrary.

### iii. Unskilled Work Limitation

Clauson next argues that the ALJ also erred by failing to incorporate the opinion of Dr. Jackson, a State agency psychological consultant opinion. Dr. Jackson opined that Clauson could perform unskilled work that did not involve excessive reading, writing or mathematical skills. Despite Clauson's contentions in her motion for summary judgment, the ALJ's decision specifically referenced Dr. Jackson's opinion and found that it was entitled to "great weight." The ALJ accordingly assessed an RFC for Clauson stating her "ability to understand, remember, and carry out complex job instructions is nonexistent," and "her ability to understand, remember, and carry out detailed but not complex job instructions is poor . . . [meaning] seriously affected but not precluded."[3] Tr. 21-22. The ALJ next found that, although Clauson's past work as a home health aide is generally considered "semi-skilled work," Clauson's RFC was such that she could work as a home health aide "as actually performed." Clauson argues that this amounted to a finding by the ALJ that she can perform skilled work, and contradicts the opinion given by Dr. Jackson.

The ALJ's actual finding, however, was that Clauson could perform her past work as a home health aide, "as actually performed," so long as those jobs did not exceed the

---

[3] Essentially, the ALJ's RFC limits Clauson to unskilled work. *See, e.g.*, 20 C.F.R. §404.1568 (describing "unskilled work" as needing "little or no judgment to do simple duties that can be learned on the job in a short period of time" and "little specific vocational preparation and judgment").

demands of her RFC. Further, even though Clauson argues that the job of home health aide is described as "semi-skilled" and exceeds the reasoning ability assessed by the RFC, the ALJ is not limited to a description of the work as it is performed in the national economy. Instead, the ALJ may properly consider how Clauson performed the job in the past. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (The determination of whether a claimant can perform past relevant work "may rest on descriptions of past work as actually performed or as generally performed in the national economy."). Here, the ALJ's determination properly takes her limitations into account and restricts Clauson to work as a home health aide as she has actually performed it in the past.

### iv. Vocational Expert's Testimony

Finally, Clauson argues the ALJ posed an incomplete hypothetical question to the vocational expert, Herman Litt. This argument fundamentally misconstrues the Fifth Circuit's test for a defective hypothetical. In *Bowling v. Shalala*, the Fifth Circuit stated that a hypothetical question posed to the vocation expert is defective if it does not "incorporate reasonably all the disabilities of the claimant recognized by the ALJ" and if the claimant or her representative is not "afforded the opportunity to correct deficiencies in the ALJ's question." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Under this standard, the ALJ is obligated to incorporate the disabilities that his opinion recognizes in his hypothetical question to the vocational expert. An ALJ need not include disabilities he does not recognize. Accordingly, the ALJ's hypothetical was not defective.

## CONCLUSION

A review of the record reveals that the ALJ applied the appropriate legal standards in making his determination. Additionally, substantial evidence supports the ALJ's determination that Clauson is not disabled under the relevant provisions of the Social Security Act. A review of the pleadings and the record on file reflect that there is no genuine issue of material fact in this case, and summary judgment is therefore appropriate. FED. R. CIV. P. 56. Accordingly, the Court **DENIES** Clauson's Motion for Summary Judgment and **GRANTS** the Commissioner's Motion for Summary Judgment.

Signed at Houston, Texas on this 21st day of November, 2013.

George C. Hanks, Jr.
United States Magistrate Judge